IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOHNSON HEALTH TECH NORTH
AMERICA, INC.,

                     Plaintiff,                      OPINION AND ORDER

    v.

                                            17-cv-834-wmc

GROW FITNESS GROUP, INC. a/k/a
GROW FITNESS, INC., and MATTHEW
SEABERG,

                     Defendants.

In this civil action, plaintiff Johnson Health Tech North America, Inc., asserts various state law claims against defendants Grow Fitness Group, Inc. a/k/a Grow Fitness, Inc. ("Grow Fitness"), and its owner Matthew Seaberg. The clerk's office previously entered default against Grow Fitness for failing to appear and dispute the claims against it. In a prior opinion and order, the court also granted plaintiff summary judgment on liability with respect to its claim that defendant Seaberg breached his personal guaranty of a promissory note, finding that plaintiff had established the elements of that claim and rejecting defendant Seaberg's affirmative defenses of duress and unconscionability, while reserving on the issue of damages. (1/7/20 Op. & Order (dkt. #72).)

After a telephonic status conference and additional submissions by both parties, the court held a trial on damages on February 18, 2020, at which plaintiff appeared by counsel and its corporate controller Christine Draves and defendant Matthew Seaberg appeared *pro se* by videoconference from Florida. For the reasons that follow, the court will now

award plaintiff $503,795.27[1] in damages against defendant Seaberg for plaintiff's breach of his personal guaranty, while also granting plaintiff's request to dismiss its remaining conversion, civil theft and unjust enrichment claims against Seaberg. (Dkt. #85.) In addition, the court will grant plaintiff's renewed motion for default judgment against defendant Grow Fitness (dkt. #82), in the amount of $1,829,834.03, with $503,795.27 of that award owed jointly and severally with defendant Seaberg.

OPINION

**I. Damages Claim against Seaberg for Breach of Personal Guaranty**

During the hearing, plaintiff's corporate controller, Christine Draves, testified in person as to Grow Fitness's payments on the September 2014 Note, as set forth in Exhibit 3. (*See also* Draves Decl., Ex. 1 (dkt. #73-1).) Draves also specifically testified and provided evidence in support of plaintiff's treatment of Grow Fitness's commission or profit on three, disputed transactions: (1) the Powerhouse deal; (2) the Rollins College deal; and (3) payment of Fitness Fixt invoices.[2] In addition to cross-examining Graves, defendant Seaberg testified with respect to plaintiff's statement of payments, acknowledging that this information was in the control of plaintiff and he had no basis to

---

[1] As described below, this amount reflects the amount of principal and interest due and owing on the promissory note as of January 15, 2020, amounting to $500,749,61, plus interest at a rate of 6% per year from January 15, 2020, until the date of this opinion and order, $3,045.66.

[2] In his original objections, Seaberg also argued that JHTNA owed Grow Fitness a commission for another deal involving the University of Central Florida. Seaberg, however, did not maintain this objection in his most recent pre-trial submission; nor did he offer testimony or other evidence in support of this challenge at trial. Moreover, Seaberg's abandonment of this objection makes sense in light of Draves' testimony that this sale was canceled.

2

object to its accuracy, other than to challenge plaintiff's treatment of the three, disputed transactions just noted. As such, the court will limit its review to these three challenges.

### A. Powerhouse Deal

First, with respect to the Powerhouse deal, plaintiff presented evidence demonstrating that based on the sale of JHTNA products, Grow Fitness earned as commissions or profits $115,795.00, which reflects the difference between the Matrix invoiced product price and the Grow Fitness price, less the freight (or shipment) expense. (Ex. 18.) Seaberg testified that some of the listed Grow Fitness prices were higher than the prices he negotiated, specifically testifying that he was given a further 5% or 10% discount, but he provided no support for this representation or any quantification of the difference between the calculated commission and his claim as to what should have been provided. Therefore, the court credits plaintiff's calculation of the commission earned on the sale of JHTNA Matrix products.

Seaberg also pointed to Exhibit 12 -- an unsigned document dated February 12, 2016, which purports to set forth plaintiff JHTNA and defendant Grow Fitness's agreement that the Powerhouse deal would proceed as a "Marginal Transaction Credit Transaction," whereby Grow Fitness would be responsible for certain payments should the customer default. (Ex. 12.) That document specifically, provided:

$150,192.00 Recourse from Grow Fitness Group, Inc. profit margin on Matrix

$112,470.00 Recourse from Grow Fitness Group, Inc. on non-Matrix products/cost

$592,366.00 Total /Lease equipment cost

3

(*Id.*) From this, Seaberg testified that Grow Fitness was owed $262,000 in profits or commissions from JHTNA as the manufacturer/seller of Matrix products.

This document and Draves' testimony more generally about the structure of this deal, however, does not support such a finding. On the contrary, there is no dispute that this deal was a "marginal transaction credit agreement," with United Leasing, Inc., as the lessor. (Ex. 13.) In that capacity, JHTNA only invoiced United Leasing for the equipment JHTNA actually sold as part of the Powerhouse deal and, therefore, JHTNA was only responsible for paying Grow Fitness for any commission (really gross profit) associated with that portion of the deal. There is some question as to whether Seaberg ultimately provided other non-JHTNA product to Powerhouse "free" as an incentive or under some other discounted arrangement, but to the extent Grow Fitness intended to earn a profit or commissions from the sale of non-Matrix products/cost, then all the documentation suggests that Grow Fitness was required to either seek such payments from United Leasing or from the customer directly. To the extent that Seaberg was confused about this, which is understandable given the parties' changing and increasingly strained relationship, it was incumbent upon *him* to clarify who *was* billing for non-Matrix product, not to wait years later and then assert that JHTNA should have invoiced for the product as well. Regardless, Seaberg offered *no* documentary evidence to support his claim that JHTNA was on the hook for the estimated $112,470.00 in "products/cost" for non-Matrix products, nor even the $68,000 that he actually spent to purchase a portion of this product.

As for the discrepancy between the $150,192.00 estimate in Exhibit 12 and the $115,795.00 ultimately assigned to Grow Fitness as commissions or profits on JHTNA's

4

*Matrix* product sales, this is the result of: (1) a slight difference between the equipment *contemplated* to be sold in the February 2016 projection and the invoiced sales as part of the actual Powerhouse purchases in September 2016; and (2) accounting for the cost of freight or shipment, which reduced the amount of profit on those sales, which Draves credibly testified was consistent with plaintiff's practices and also set forth in the Independent Sales Agreement (Ex. 4) signed by Seaberg around the same time his commission was calculated as a condition to him receiving the $68,074 wire payment, as discussed below. Based on all this, the court finds that plaintiff has demonstrated by a preponderance of the evidence that it properly calculated Grow Fitness's "commissions" (again really based on JHTNA's gross profit or mark up on Matrix product sold) in the Powerhouse deal.

With respect to this deal, defendant Seaberg also challenges plaintiff's *treatment* of the $115,795.00 in commissions. The record demonstrates that plaintiff wired Seaberg $68,074.00 on December 6, 2016, and allocated the remainder of $47,721 to past due accounts receivables owed by Grow Fitness. Seaberg contends that the $68,074 payment was *not* part of his commission, but instead was intended to reimburse Grow Fitness for used equipment purchased from a third-party supplier of non-Matrix bar bells and other equipment, CSM, ultimately sold as part of the Powerhouse deal. And, indeed, it appears that Seaberg had submitted the CSM invoice to JHTNA for reimbursement. (Ex. 20.) However, while JHTNA agreed to remit payment of $68,074.00 to Grow Fitness, instead of assigning the full amount of the commission to either past due accounts receivable or the amount owed under the promissory note (as it appears JHTNA had a right to do as a

5

matter of self-help), this does *not* mean that JHTNA was obligated to reimburse him for Grow Fitness's purchase of non-Matrix equipment.

In other words this $68,074.00 payment properly fell within the $112,470.00 recourse on *non*-Matrix products estimated in the February 2016 document (Ex. 12). In an email dated December 5, 2016, the day before the $68,074 payment was wired to Grow Fitness, Draves even explained to Seaberg that:

> It was approved to wire you $68.074 tomorrow for the CMS product, no additional remittance will be done on the Power House order, after the agreement is finalized and signed.

(Ex. 22.) Not only does this appear to be a concession on JHTNA's part, since Seaberg offers *no* evidence that JHTNA ever invoiced Powerhouse for any non-Matrix product, but Seaberg claims that the payment was actually a reimbursement that JHTNA was required to make appears to reflect a post-hoc creation by someone who did not understand the Powerhouse transaction itself or, at best, operated by the seat of his pants, documenting nothing contemporaneously.

While Seaberg obviously believed he could dig out of the debt that he took on upon creating Grow Fitness, as presumably did JHTNA in advancing hundreds of thousands of additional credit to Grow Fitness even after its prospects dimmed, the reality is that both Seaberg and JHTNA proved to be wearing rose-colored glasses. Regardless, the court finds that plaintiff has at least demonstrated by a preponderance of the evidence it paid or otherwise accounted for the full amount of the profits or commissions Grow Fitness earned in selling JHTNA equipment as part of the Powerhouse deal.

### B. Rollins College Deal

Next, Seaberg challenges the amount and treatment of his commission for the Rollins College deal. Through the testimony of Draves and exhibits, plaintiff established that the commission or profits for this deal for Grow Fitness was $39,952.35, earned on approximately $166,000 worth of sales. (Exs. 24, 25.) In his objections submitted before the trial, defendant Seaberg asserts that Grow Fitness's commission or profits for this deal should have been $48,788.35, but his only support for this assertion was an email sent to Seaberg by another Grow Fitness employee, dated December 21, 2016, which purports to calculate the commission in that amount. (Seaberg Obj., Ex. C (dkt. #75-3).) Whether this was an early estimate or a miscalculation, Seaberg offered no other support for this self-serving higher number.

Defendant Seaberg also takes issue with plaintiff's treatment of the commission as well, in allocating $15,279.45 of the amount due against the promissory note in January 2017 and the remaining $24,672,90 of the amount due under the promissory note in February 2017. However, these amounts were reflected on the statement of payments. (Ex. 3.) Moreover, the Independent Sales Agreement, signed by Seaberg in late 2016, permitted JHTNA to apply commissions or profits to the amount owed under the promissory note. (Ex. 4.) At the hearing, defendant Seaberg testified that plaintiff delayed the Rollins College deal so that it would fall within the Independent Sales Agreement, but having already rejected Seaberg's defenses of duress or unconscionability, for the reasons previously provided in its opinion and order on plaintiff's motion for summary judgment

(1/7/20 Op. & Order (dkt. #72) 16-21), the court sees no merit in Seaberg's challenge to JHTNA's treatment of this particular commission.

C. Fixture Fixt

Finally, defendant Seaberg objected to plaintiff's damages request on the basis that it failed to pay another company owned by Seaberg, Fixture Fixt, the sum of approximately $16,000 in invoices from 2017.[3] First, this challenge appears unrelated to the damages sought for defendant's breach of the personal guaranty. Second, plaintiff demonstrated that it permanently blocked Fitness Fixt as a vendor in 2017 and, therefore, appropriately refused to pay those invoices. As Draves testified during the hearing, Grow Fitness was not required to use a specific installer, whether Fitness Fixt or some other company; indeed, JHTNA could have arranged for those services and then charged the dealer. Accordingly, the court finds no basis to deduct the amount Seaberg claims JHTNA owes Fitness Fixt from the amount of the damages for Seaberg's breach of the personal guaranty claim.

In addition to these specific challenges, defendant Seaberg repeatedly testified that he was coerced into signing the Independent Sales Agreement or otherwise acquiescing to JHTNA's treatment of the various commissions. Again, the court sees no basis to reexamine its finding at summary judgment that a reasonable jury could not find duress or unconscionability on this record. If anything, the evidence at trial simply confirms that Seaberg believed that he could grow his way out of debt by continuing to make big

---

[3] Defendant Seaberg originally argued that JHTNA owed Fitness Fixt over $20,000, but in response to plaintiff's submission showing over $4,000 in wire payments, Seaberg amended this claim downward in his pre-trial submissions.

8

commissions on new sales to Division I colleges and other institutions outside of JHTNA's existing customer base, a belief that JHTNA apparently shared. And, had those sales materialized, such may well have been the case. When that did not happen, however, Seaberg maintains that JHTNA was to blame, but he has wholly failed to document those claims. Instead, on the record at summary judgment *and* again at trial, it is apparent that all parties lost on this failed business relationship.

Based on the evidence presented at trial, therefore, the court concludes that plaintiff has demonstrated by a preponderance of the evidence that as of January 15, 2020, Grow Fitness owed $500,749.61 on the promissory note, for which defendant Seaberg is liable under the terms of his personal guaranty. In addition to this amount, the court will award $3,045.66, reflecting the amount of additional, accrued contractual interest from January 15, 2020, to the date of this order, for a total award against Seaberg in the amount of $503,795.27. Because, as described above, the court will award plaintiff that same amount of damages against defendant Grow Fitness for breach of the promissory note, this damage amount will be due jointly and severally against both defendants.

**II. Motion for Default Judgment against Defendant Grow Fitness, Inc.**

Also before the court is plaintiff's renewed motion for default judgment against defendant Grow Fitness, Inc. With default having already been entered against defendant Grow Fitness (dkt. #10), the court accepts as true all of the factual allegations in the complaint, except those relating to damages. *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004).

Plaintiff asserted nine causes of action against defendant Grow Fitness, some of which were pleaded in the alternative. In its motion for default judgment, plaintiff seeks

9

a total award of $1,814,071.34 against Grow Fitness.  This award encompasses the following four categories of damages:  (1) $820,500.03 for breach of the 2014, 2015 and 2016 Commercial Dealer Agreement by failing to pay timely for fitness equipment purchased from plaintiff, including interest at 18% per year as permitted under the terms of that agreement; (2) $501,749.61 for breach of the promissory note, reflecting the amount owed as of January 15, 2020; (3) $76,260.98 for attorneys' fees and costs in bringing this action as permitted by the terms of the promissory note; and (4) $416,560.71 representing the value of the fitness equipment at the time of the wrongful taking plus interest as of January 15, 2020, for plaintiff's conversion claim or, in the alternative, for the breach of the Independent Sales Agreement claim or fraudulent and negligent misrepresentation claims.

In light of Draves' declaration submitted in support of plaintiff's motion and her testimony during the evidentiary hearing, the court concludes that plaintiff has demonstrated each of these categories of damages.  *First*, with respect to the amount owed on accounts receivables pursuant to the commercial dealer agreements, plaintiff submitted evidence demonstrating that from October 1, 2014, through December 31, 2016 (at which point the parties transitioned to a direct sale arrangement), Grow Fitness's outstanding accounts receivable amount was $443,088.85.  (Draves Decl. (dkt. #83) ¶ 25; *id.*, Ex. B (dkt. #83-2).)  Moreover, plaintiff demonstrated that as of January 15, 2020, the total interest that accrued at a rate of 18% per year on the outstanding accounts receivable amount is $377,411,18.  (*Id.* ¶ 29; *id.*, Ex. C (dkt. #83-3).)  In light of the time that has

lapsed between January 15, 2020, and today's date, the court will award an additional $8,084.85 in interest.

*Second*, with respect to the damages for the breach of the promissory note, for the same reasons described above in arriving at damages for defendant Seaberg's breach of the personal guaranty of that note, the court will award $503,795.27 against defendant Grow Fitness to be owed jointly and severally with Seaberg.

*Third*, as for plaintiff's request for an award of reasonable attorneys' fees, the promissory note provides that "Maker agrees to pay all costs of collection before and after judgment, including attorneys' fees . . . ." (Ex. 1.) Furthermore, plaintiff's counsel represents that as of January 15, 2020, plaintiff has incurred $76,260.98 in attorneys' fees and costs. (Zielke Decl. (dkt. #84) ¶ 11.) While normally, the court would require plaintiff to submit time records and / or invoices for legal services, the court finds this amount reasonable and an appropriate category of damages in light of the plain language of the promissory note and plaintiff's extensive efforts in prosecuting its claims, including the original prosecution of this matter, delays attendant to Seaberg's failed attempt at bankruptcy, the filing of supplemental submissions and preparing for and attending an evidentiary hearing on the motion for default judgment, which occurred after the reported period.

*Fourth*, plaintiff seeks an award for defendant Grow Fitness's collection from customers for plaintiff's fitness equipment from January 1, 2017, to August 31, 2017, in violation of the Independent Sales Agreement, in the amount of $253,866.42, as well as interest at the rate of 18% per year on those same transactions as of January 15, 2020, in

the amount of $162,694.29. In support, Draves avers to these totals and submits evidence in support of the calculations. (Draves Decl. (dkt. #83) ¶¶ 41, 45; *id.*, Exs. D, E (dkt. ##83-4, 83-5).) The court finds plaintiff has also demonstrated the legal basis for this category of damages. Moreover, in light of the time that has lapsed between January 15, 2020, and today's date, the court will award an additional $4,632.19 in interest.

In light of these findings, the court awards plaintiff a total damages award of $1,829,834.03 against defendant Grow Fitness.

ORDER

IT IS ORDERED that:

1) The reserved portion of plaintiff Johnson Health Tech North America, Inc.'s motion for partial summary judgment (dkt. #42) is DENIED. Consistent with this decision after trial, damages are awarded to plaintiff in the amount of $503,795.27 against defendant Matthew Seaberg to be owed jointly and severally with defendant Grow Fitness Group, Inc. a/k/a Grow Fitness, Inc.

2) Plaintiff's motion for entry of default judgment against defendant Grow Fitness Group, Inc. a/k/a Grow Fitness, Inc. (dkt. #82) is GRANTED. Plaintiff is awarded $1,829,834.03 in damages against Grow Fitness, of which $503,795.27 to be owed jointly and severally with defendant Seaberg.

3) Plaintiff's request to dismiss its remaining claims of conversion, civil theft and unjust enrichment against Seaberg (dkt. #85) is GRANTED.

4) The clerk's office is directed to enter judgment as follows:

    a) In favor of plaintiff Johnson Health Tech North America, Inc., and against defendants Matthew Seaberg for his breach of personal guaranty and Grow Fitness Group, Inc. a/k/a Grow Fitness, Inc., for its breach of the promissory note in the amount of $503,795.27, jointly and severally.

    b) In favor of plaintiff Johnson Health Tech North America, Inc., and against defendant Grow Fitness Group, Inc. a/k/a Grow Fitness, Inc., on all claims in the amount of $1,326,038.76.

    c) In favor of defendant Matthew Seaberg and against plaintiff Johnson Health

Tech North America, Inc., on all other claims, dismissing them with prejudice and without costs.

Entered this 21st day of February, 2020.

                        BY THE COURT:

                        /s/

                        _____
                        WILLIAM M. CONLEY
                        District Judge